### THE BELLE.

(District Court, S. D. New York. July 30, 1898.)

Tug and Tow—Stranding on Unknown Rock—New Channel—Government Dredging—Tug Exonerated.

The libelant's barge was run upon an unknown rock, which was somewhat to the westward of the old channel way in the Harlem river and about opposite Morris dock. Upon proof that during four years preceding there had been considerable government dredging in widening and deepening the channel way; that in the consequent changes of customary navigation, the old channel way was partly occupied by boats moored to the dock, and that the ordinary practice of the boatmen in recent years had been to go still further to the westward than where this rock was; *held* that the tug was not chargeable with negligence.

Wilcox, Adams & Green, for libelant.
Alexander & Ash, for respondents.

BROWN, District Judge. Although the rock on which the libelant's brick barge was run in the Harlem river, a little below Morris dock, was not before known to those accustomed to navigate in that vicinity, my first impressions were that the Belle might be held liable for voluntarily going outside of the old and customary channel way near Morris dock, and taking a course that had not been sufficiently proved to be safe. But upon considering all the circumstances proved, and that the tug is legally answerable, not as a common carrier, but only for the exercise of reasonable prudence and skill, I think the application of the rule first named under the circumstances of this case would be unduly rigorous, and in excess of the fair measure of legal liability. The burden of showing a sufficient reason for leaving the old channel way is no doubt upon the claimants. But this burden seems to be fully met by the undoubted proof that the customary navigation of this part of the Harlem river had been so changed during the four years prior to this accident (September 4, 1897) by the government dredgings and by the dredging by the constructors of the speedway, that at the time of this disaster all or nearly all of the old channel way for vessels of 9 feet draft, was occupied by vessels moored at Morris dock and extending out from 150 to 200 feet into the river, which was the limit of the old channel. The evidence leaves no doubt that after the dredging above referred to, from 1893 to 1896, vessels of 9 feet draft were accustomed to go freely much to the westward of the old channel, and to the westward even of the spot where Mr. Taylor locates the rock. This barge drew but 8½ feet; the water had

risen from 1 to 2 feet with the flood tide. The measurements all around the boat as she lay for two weeks upon the rock showed abundance of water; and until four days before this accident, no such obstruction was known to any one. The only known danger in going even further to the westward was that of running upon mud flats, as the libelant's witness Lewis states. The rock, Mr. Taylor says was a boulder, its highest part 5½ feet below low water. The dredger says that it was not a boulder, but a detached piece; and but for this unknown rock there was plenty of water for the barge anywhere from Morris dock to the westward of the 9-foot contour line. The mooring of so many vessels side by side along Morris dock, was evidently based on the changed conditions of navigation, the westward extension of the channel, and the practice of boatmen to go further to the westward than formerly in consequence of the great changes in the bottom by dredging. Mr. Taylor states that in November, 1894, and November, 1896, the government had dredged a channel 10 feet deep at low water to a line within 10 feet of where he locates this rock; and that in the survey of 1896 (Exhibit 10) the 12-foot contour line runs close to the east side of the rock, as he locates it, and the 9-foot contour line a little to the west of it. The rock was evidently then unknown to him. This 12-foot contour line is about 240 feet west of Morris dock and the 9-foot line about 250 feet west of the dock. It is therefore too much to say that ordinary prudence required the Belle to keep in the old channel course as though no dredging had been done.

The only remaining question is, did the Belle negligently depart excessively from the old channel? She had three boats in tow in Indian file, on short hawsers, and heavily loaded. They were liable to sway a little to port or starboard. The weight of evidence is that the barge Rose did not go more than 50 feet outside of the moored vessels, even if so much. The libelant's witness Lewis estimates the distance as only 25 or 30 feet; so that the moored vessels, if the latter estimate is correct, must have occupied more than 150 feet of the water way. The master's estimate of 50 feet does not differ materially from the distance derived from Mr. Taylor's location of the rock; for if the lines of the barge, which was 108 feet long by nearly 32 feet wide, be carried back along her actual course from Taylor's location of the rock, so as to be abreast of Morris dock, it will be found from Exhibit 10 that the easterly side of the barge would be a little less than 200 feet from the north end of the dock. There is no doubt that the moored vessels took up 150 feet of the water way; so that the distance of the Rose as she passed them would be less than 50 feet. I cannot find it unreasonable or imprudent in the Belle, with such a tow, and going with the tide probably 5 or 6 miles an hour, to allow a margin of 40 or 50 feet from the moored vessels, in the absence of any knowledge among boatmen of any obstruction, and the previous practice of boatmen to go even further to the westward.

The libel should be dismissed with costs.